### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHARLES E. ANDERSON, Trustee on behalf of )
the PAINTERS' DISTRICT COUNCIL NO. 30 )
HEALTH AND WELFARE FUND )
           )
                    Plaintiff, )    Case No. 08 CV 2522
        v. )
                                )    Judge Zagel
CORY DERGANCE and THE LAW OFFICES OF )
PETER FERRACUTI, P.C., )
           )
                  Defendants. )
                  )

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A
### PRELIMINARY INJUNCTION

Plaintiff, Painters' District Council No. 30 Health and Welfare Fund (the "Fund"),

through its attorneys, submits this memorandum of law in support of its motion for a preliminary

injunction.

### FACTS

Defendant Cory Dergance was an "Eligible Individual" under the health and welfare plan

(the "Plan") administered by the Plaintiff. Defendant Dergance was injured on February 18,

2007, at a Dollar General store. The Fund paid medical expenses on his behalf in the amount of

$6,307.99, and made disability benefit payments to him in the amount of $8057.14. This

coverage was provided by the Plan terms, to which Defendant Dergance agreed in order to

receive benefits.

The Plan's terms include a right of subrogation and authorization of reimbursement

provision, which entitles the Plan to recoup benefit payments made when an Eligible Individual

recovers from a third-party. This provision specifically states that any recovery is subject to an

equitable lien and constructive trust in favor of the Fund, that the Fund is entitled to full

reimbursement unreduced by attorneys' fees, and that the Illinois common fund doctrine does not apply.

Defendant Dergance, through his attorneys at the Law Offices of Peter Ferracuti, P.C., recovered $30,000.00 for his injuries from a third-party, Dollar General.  Plaintiff seeks a preliminary injunction requiring Defendants to preserve $14,365.13 of the $30,000.00 recovered, which will maintain the status quo until this Court can determine the rights and obligations of the parties, and will prevent Defendants from placing the disputed funds beyond the reach of the Court, thereby potentially preventing the imposition of an equitable remedy, which is the only type of remedy available to Plaintiff under ERISA § 502(a)(3).[1]

## ARGUMENT

I.    **Plaintiff can establish the three elements required for a preliminary injunction, thus Defendant should be ordered to preserve $14,365.13 of the $30,000.00 he received in settlement until the rights of the Plaintiff have been determined by the Court.**

"A preliminary injunction is warranted if the [Plaintiff] can make a threshold showing (1) that the case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; [and] (3) that [it] will suffer irreparable harm if the injunction is not granted."[2]  The Court must also consider the public interest,[3] "meaning the consequences of granting or denying the injunction to non-parties."[4]  If the Court is satisfied that the three requirements have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, and balance that harm against the irreparable harm the moving party will suffer if relief is denied.[5]

---

[1] 29 U.S.C. 1132(a)(3).
[2] *Storck USA, L.P. v. Farley Candy Co.,* 14 F.3d 311, 313 - 314 (7th Cir. 1994).
[3] *Id.*
[4] *Abbott Laboratories v. Mead Johnson & Co.,* 971 F.2d 6, 12 (7th Cir. 1992).
[5] *Farley Candy Co.* at 314.

"The balancing involves a 'sliding scale' analysis: the greater the [Plaintiff's] chance of success on the merits, the less strong a showing must it make that the balance of harms is in its favor." [6]   The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief."[7]

Balancing the harms is a two-step process. "First the court must assess the [Plaintiff's] chance of success." [8]   "Next it must balance the hardships in accordance with this determination." [9]   Initially, the Court only needs to determine that the Plaintiff has some likelihood of success on the merits. At the balancing stage, however, the Court must determine how great the Plaintiff's likelihood of success on the merits is in order to properly balance the potential harms.[10]

A. **ERISA empowers a fiduciary to obtain appropriate equitable relief to enforce Plan terms. Plaintiff is seeking equitable relief based on explicit terms of its benefit Plan that Defendant Dergance agreed to. Plaintiff is entitled to equitable relief and has a strong likelihood of success on the merits of its claim.**

Section 502(a)(3) of ERISA provides that a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.[11]

The terms of the Plan, the benefits and obligations, including the participant's duty to reimburse the Plan, are memorialized in a written agreement.  Both the Fund and Defendant

---

[6] *Id.*
[7] *Abbott Labs.*, 971 F.2d at 12. (internal citations and quotation marks omitted).
[8] *Farley Candy Co.* at 314.
[9] *Id.*
[10] *Id.* at 314 n. 1.
[11] 29 U.S.C. §1132(a)(3)

Dergance must abide by the Plan's provisions. By accepting benefits under the Plan, Defendant Dergance agreed to the right of subrogation and authorization of reimbursement provision that entitled the Fund impose an equitable lien and constructive trust on any recovery and to full reimbursement of benefits paid when Defendant recovered for his injuries from a third-party. (See Exhibit 1, Painter's District Council No. 30 Health and Welfare Plan §2.17)

Based on the provisions of ERISA and the terms of the Plan, Plaintiff has a strong likelihood of succeeding on the merits of its claim. Under the balancing of harms, this strong likelihood weighs heavily in the favor of granting a preliminary injunction.

**B. No remedy at law exists.**

Plaintiff must establish that no adequate remedy at law exists here. Since, under ERISA, Plaintiff is entitled only to seek and injunction or other appropriate equitable relief, Plaintiff has no remedy at law.[12] "The plain wording of [ERISA] § 502(a)(3) makes clear that, if the [Plaintiff] is seeking legal relief, [the Federal Court] do[es] not have jurisdiction."[13] As such, this factor supports issuance of a preliminary injunction.

**C. Plaintiff will suffer irreparable harm without a preliminary injunction.**

A preliminary injunction is appropriate to "prevent a defendant from making a judgment uncollectible"[14] and thereby to "protect the possibility of [an] equitable remedy."[15] Plaintiff will have no basis for jurisdiction to enforce the terms of the Plan or its rights under ERISA if Defendants disburse the funds or otherwise place the settlement moneys beyond the reach of the Court. Such an act by Defendants would cut off Plaintiff's equitable remedies, which are its only remedies, thus Plaintiff would suffer irreparable harm without a preliminary injunction. This

---

[12] *See* 29 U.S.C. 1132(a)(3).
[13] *Administrative Committee v. Gauf*, 188 F.3d 767, 770 (7th Cir. 1999).
[14] *Capital Distribution Services, Ltd. v. Ducor Express Airlines, Inc.*, 440 F.Supp.2d 195 (E.D.N.Y. 2006)
[15] *FTC v. Singer*, 668 F.2d 1107, 1112 (9th Cir. 1982)

factor supports the issuance of a preliminary injunction.

    **D. In balancing the hardships, Plaintiff's irreparable harm and strong likelihood of success weigh heavily against the virtually non-existent hardship Defendant suffers if the Court maintains the status quo.**

Defendants are holding the $30,000.00 in trust and will suffer little to no harm if the Court issues a preliminary injunction. Plaintiff's irreparable harm outweighs any inconvenience Defendants may suffer by preserving $14,365.13 of the $30,000.00 settlement. Defendants have access and use of the remaining $15,634.87. The fact that the money is held in trust does not make a preliminary injunction moot, the potential of harm to the Plaintiff is too great. As the Seventh Circuit Court of Appeals stated in *Lucini Italia Company v. Grappolini,* "A request for an injunction...is not mooted because the parties have, for the course of the litigation and by their own agreement, maintained the status quo."[16] Thus injunctive relief is necessary and appropriate.

    **D. The public interest is advance by issuing a preliminary injunction.**

The Fund's right to reimbursement from the recovery of a beneficiary promotes the stability and affordability of benefits to all Plan participants. Not granting the preliminary injunction puts this right in jeopardy. Should Defendants move the settlement moneys, the other Plan participants would unjustly bear the cost, while Defendants would be unjustly enriched. Avoiding this result by granting the injunction strengthens welfare plans which reduces costs and increases benefits to the public. *See Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293 (7th Cir. 1993). Accordingly, this Court should grant Plaintiff's request for relief.

---

[16] *Lucini Italia Company v. Grappolini,* 288 F.3d 1035, 1038 (C.A.7(Ill.) 2002)

## CONCLUSION

Taking into consideration all of the factors discussed above, Plaintiff has a strong likelihood of success on the merits of its claims, and will suffer irreparable harm if a preliminary injunction is not issued, which far outweighs any inconvenience to Defendants.   Thus this Court should grant Plaintiff's motion for a preliminary injunction.


Respectfully,

/s/ M. Garrett Hohimer
M. Garrett Hohimer
One of Plaintiff's attorneys


Marisel A. Hernandez
M. Garrett Hohimer
Jacobs Burns Orlove Stanton & Hernandez
122 S. Michigan Ave., Suite 1720
Chicago, IL 60603

## CERTIFICATE OF SERVICE

I certify that on May 8, 2008, I electronically filed the foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION with the Clerk of the court using the CM/ECF system; however, there are no attorneys of record who will be sent electronic notification of such filing.

I certify that on May 8, 2008, I caused a copy of the attached PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION to be sent by facsimile, email, and first class mail, postage prepaid, to:

Cory Dergance
C/O Julie Ajster, Attorney
The Law Offices of Peter F. Ferracuti, P.C.
110 East Main Street
Ottawa, IL 61350
815-223-4195
815-434-4513
jajster@peterferracuti.com


The Law Offices of Peter F. Ferracuti, P.C.
110 East Main Street
Ottawa, IL 61350
815-434-4513
815-434-2796
pferracuti@peterferracuti.com


/s/  M. Garrett Hohimer

# Exhibit 1

# PAINTERS' DISTRICT COUNCIL NO. 30

# HEALTH AND WELFARE FUND

# RULES AND REGULATIONS

**As Amended and Restated January 1, 2005**

**January 2005**

E.   Medical Benefits shall be payable only for expenses which are Medically Necessary and required in connection with the care and treatment of an individual as a result of injury or sickness.

F.   Benefits shall be payable only for expenses which are incurred upon the recommendation of, or with the approval of, a Physician.

G.   With respect to the provisions of all benefits except the Death, Accidental Death and Dismemberment, Weekly Disability and Orthodontia Expense Benefits, the term "Employee" shall also be construed to include a Retiree where applicable and the term "Dependent" shall be construed to include the Eligible Dependent spouse of a Retiree where applicable.

H.   The Family Supplemental Benefit will be paid to the Eligible Individual only.

**2.17   Right of Subrogation and Authorization of Reimbursement**

(a)   For the purposes of this provision, "another source" or "other source" shall mean and include, but not be limited to, an employee welfare plan or arrangement, a medical and hospital benefit plan, a no-fault or other automobile insurance policy, an uninsured or underinsured motorist provision or medical pay provision of the Eligible Individual's automobile insurance policy, an employer under a Workers' Compensation or Occupational Diseases Act or act of similar import, or a third party tortfeasor. Notwithstanding this provision, benefits shall not be deemed to be payable under the Plan for medical or hospital care, the need for which arose out of and in the course of the Eligible Individual's employment or for which the Eligible Individual is entitled to benefits under a Workers' compensation or Occupational Diseases Act.

(b)   Therefore, an Eligible Individual's entitlement to benefits from the Plan shall be conditioned upon the following terms and provisions:

23

(1)    In the event that benefits are paid by the Plan to or on behalf of an Eligible Individual as Weekly Disability benefits or for Covered Expenses incurred by the Eligible Individual for Hospital and medical services and supplies or dental services or supplies provided as a result of or in connection with an injury, sickness, accident or condition and such Eligible Individual recovers or is entitled to recover from another source all or a part of such incurred benefits or expenses, the Eligible Individual's right to recovery of all or part of such benefits or expenses from another source shall become the Plan's and the Plan shall be entitled to reimbursement of such payments in full, but not more than the amount actually recovered from such other source.

(2)    As a condition of eligibility for benefits, an Eligible Individual shall protect the Fund's right to reimbursement for benefits paid, shall do everything that is necessary to enable the Plan and the Trustees to bring about effective recovery of such benefits paid, and shall assist and cooperate with representatives designated by the Plan in the pursuit of its right under this provision.

(3)    The Fund shall also be reimbursed for any sum it paid to BlueCross BlueShield as an access fee to any Blue Cross Blue Shield PPO discount network, including Blue Cross Blue Shield of Illinois.  Additionally, no attorney's fees or costs shall be deducted from any amount paid to the Fund as the "common funds" doctrine is not applicable.  Any "make whole" doctrine shall not apply.

(4)    Notwithstanding any other provision of this Plan, and in addition to such rights of recovery or offset, the Plan shall have a lien, enforceable as a provision of this Plan, either before or after an adjudication of other liens, for the full amount due to the Plan.  In the event a court awards the Plan less than the full amount of

24

benefits, through an "adjudication of liens" or otherwise, the specific proceeds received by the Eligible Individual shall be subject to a "constructive trust" or "equitable lien" in favor of the Plan and the amount paid the Plan pursuant to the court's award and this Plan provision establishing a "constructive trust" or "equitable lien" may be enforced through any available equitable remedy to ensure that the proceeds subject to the "constructive trust" or "equitable lien" are turned over to the Plan.

While not affecting the Plan's right to receive the full amount of benefits paid, the Trustees, or their designated representative, may elect in their sole discretion, in an appropriate case, to pay a portion of the Eligible Individual's attorney's fees in exchange for the waiver of the terms of the common fund doctrine by the involved attorney and the Eligible Individual.

(5)     The Eligible Individual's entitlement to benefits from the Plan shall be further conditioned upon the execution by the Eligible Individual, or by someone legally qualified and authorized to act on that individual's behalf or, if the Eligible Individual is a minor, by such minor's guardian, of all documents required by the Fund, including a subrogation/agreement to repay and an agreement not to assign to any other person the Eligible Individual's right of recovery of medical or Hospital expenses paid by the Fund.

(A)     In the event the Eligible Individual purports to assign the right to recovery of benefits to which this Fund is subrogated, the Fund shall have the right to petition any court of competent jurisdiction for appropriate relief on the basis that the Eligible Individual's purported assignment is void and that a constructive trust be established in favor of

the Fund over any amounts recovered from another source for Hospital or medical services for which benefits were paid by the Fund.

(B)     The Eligible Individual (or guardian, if appropriate) shall be obligated to reimburse the Fund all benefits paid to the Eligible Individual's assignee which are not reimbursed to the Fund.

(6)     No benefits shall be payable by the Fund if an Eligible Individual (or guardian, if appropriate) fails to execute a subrogation/agreement to repay or otherwise fails to cooperate with the Fund in the pursuit of its rights.

(7)     If the Eligible Individual (or guardian, if appropriate) institutes an action against another source, the Fund shall be entitled to intervene and participate in such action, but shall not be required to do so.

(8)     If the Eligible Individual (or guardian, if appropriate) fails or refuses to institute the action against another source within a reasonable time, the Fund shall be entitled to do so in the name of the Eligible Individual for the purpose of recovering amounts due pursuant to this provision.  In the event of a settlement or a recovery by the Eligible Individual from another source as a result of such action, the Fund's expenses, costs and incurred attorneys' fees shall be reimbursed out of such settlement or recovery.

(9)     If the Plan pays benefits on a claim and an Eligible Individual receives payments or settlement from another source and if the Eligible Individual (or guardian, if appropriate) does not repay the Plan the amounts due pursuant to this provision, the Plan shall have the right to reduce any future benefits that the Eligible

26